THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION** |
| vs. | ) | **AND ORDER** |
| Jose Velarde-Pelayo, | ) | |
| Defendant. | ) | Case No. 2:17CR385 DS |
| | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Before the court is Defendant, Jose Velarde-Pelayo's Motion to Dismiss Indictment pursuant to Fed.R.Crim.P. 12(b)(3)(B)(v). After reviewing the parties' briefing, the court has determined that oral argument would not materially assist in the determination of the motion, so the court hereby denies Defendant's request for oral argument and will decide the Motion to Dismiss based on the written memoranda now before the court.

The indictment against Jose Velarde-Pelayo (Defendant) arises from an investigation initiated by Homeland Security Investigations (HIS) and the Bureau of Alcohol, Tobacco, and Firearms (ATF) special agents regarding the sale of suspected restricted firearms. On August 29, 2016, a person cooperating with law enforcement arranged to purchase a Romanian-made AK-47 type rifle from Defendant. On October 18, 2016, the individual purchased a Ruger model 10/22, .22 caliber rifle from Defendant.   Based on record checks, HSI agents determined that Defendant was not a citizen of the United States, and did not have lawful immigration status to be in the United States. Defendant had submitted an approved application, form I-821D, for Consideration

of Deferred Action for Childhood Arrivals (DACA), on which he listed his place of birth as Puerto Vallarta, Mexico, and his citizenship/nationality as Mexico. ECF No. 21-2. Additionally, Defendant provided information regarding his entry into the United States and stated his initial entry as 10/8/2000, at Nogales, Arizona, and listed his status at entry as "EWI—Entry without Inspection. *Id.*

On June 28, 2017, a grand jury returned a multiple count indictment alleging multiple violations of Title 18 U.S.C. § 922(g)(5), Unlawful Alien in Possession of a Firearm.

Defendant does not dispute any of the facts alleged by the Government, other than that he was illegally or unlawfully in the United States at the time he possessed the gun. He believes that because he was an authorized recipient of temporary status under the federal government's DACA program when he allegedly possessed the gun, he was not illegally or unlawfully in the United States as articulated in the Indictment and thus, was not a restricted person with respect to firearm possession.

Defendant had applied for and received deferred action under the DACA program, valid until September 15, 2017. DACA is described by the Department of Homeland Security (DHS) as "a form of prosecutorial discretion by which the Secretary deprioritizes an individual's case for humanitarian reasons, administrative convenience, or in the interest of the Department's overall enforcement mission," and "it may be terminated at any time at the agency's discretion." *See, United States v. Arrieta,* 862 F.3d 512, 513 (5th Cir. 2017). In addition, DHS policy memorandum announcing DACA expressly states that the program "confers no substantive right, immigration status or pathway to citizenship, as only Congress, acting through its legislative authority, can confer these rights." *Id.*

Form I-797, Notice of Action, dated October 25, 2013, by which Defendant received approval notice of his 821D DACA application, expressly states that "[d]eferred action is an exercise of prosecutorial discretion by USCIS not to pursue removal of an individual from the United States for a specific period. Deferred action does not confer or alter any immigration status." ECF No. 21-2.

Pursuant to Title 18 U.S.C. § 922(g)(5), it is unlawful for an alien who is "illegally or unlawfully in the United States to possess in or affecting commerce, any firearm or ammunition." While "illegally or unlawfully in the United States" has not been defined by statute, several courts have concluded that immigration status is the key factor in determining the applicability of Section 922(g)(5). These courts distinguish between authorization to be in the United States for a temporary or limited purpose and lawful immigration status for purposes of Section 922(g)(5).

The Tenth Circuit addressed this issue in *United States v. Ochoa-Colchado*, in which it held that an alien granted temporary reprieve from removal proceedings and work authorization pending the adjudication of an application for relief from removal is still illegally and unlawfully present for purposes of Section 922(g)(5). *United States v. Ochoa-Colchado,* 521 F.3d 1292, 1298 (10th Cir. 2008). The Tenth circuit also held that an approved I-130 petition for Alien Relative does not authorize an alien to stay in the United States, and thus does not lift section 922(g)(5)'s firearm restriction for aliens illegally or unlawfully present in this country. *U.S. v. Atandi,* 376 F.3d 1186, 1191 (10th Cir. 2004).

The Fifth Circuit addressed the issue of whether an alien who has received deferred action under DACA is illegally or unlawfully in the United States for purposes of Section 922(g)(5). *See, USA v. Arrieta,* 862 F.3d 512, 513 (5th Cir. 2017). The court held that the

absence of lawful immigration status is controlling, and because DACA does not confer or alter immigration status, Section 922(g)(5) is applicable in the case of an alien previously granted deferred action under DACA. Id. at 512.

Defendant entered the United States unlawfully without inspection, and had no immigration status when he filed for deferred action under DACA. ECF. No. 21-1. While the receipt of deferred action under DACA authorized Defendant to be in the United States for a temporary period and allowed him to receive some additional benefits, it neither altered nor conferred immigration status, and thus he remained illegally and unlawfully present for purposes of Section 922(g)(5).

Defendant argues that DACA recipients must meet multiple stringent criteria to establish eligibility for the program's benefits, and that the program confers valuable rights upon the recipients. Because of this, he asserts that arbitrary termination of these valuable rights by the Department of Homeland Security without any due process procedures violates the Administrative Procedure Act and the due process clause of the Fifth Amendment to the Constitution. He claims that because his status had not been removed, nor had he been afforded due process procedures to terminate his rights and protections under DACA, he could not be considered to be "illegally or unlawfully in the United States," as required to be considered a restricted person under 18 U.S.C. 922(g)(5).

This is unpersuasive. DHS policy memorandum expressly states that deferred action under DACA, "may be terminated at any time at the agency's discretion." *See, U.S. v. Arrieta* at 513. The United States Citizenship and Immigration Services website for Frequently Asked Questions provides the following information about termination:

4

> **"Q27: Can my deferred action under the DACA process be terminated before it expires?**
>
> A27: Yes. DACA is an exercise of prosecutorial discretion and deferred action may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion."
> https://www.uscis.gov/archive/frequently-askedquestions#after%20makes%20a%20decision

A recipient of deferred action under DACA continues to lack lawful immigration status, and is still prohibited from possessing a firearm pursuant to Section 922(g)(5), whether or not deferral under DACA is current or has been terminated.

Notwithstanding a previous determination of deferred action, the Defendant continually lacked immigration status and remained illegally or unlawfully present in the United States pursuant to Title 18 U.S.C. § 922(g)(5) at the time he possessed the firearms alleged in the indictment.

**IT IS HEREBY ORDERED**:

Defendant's Motion to Dismiss Indictment is denied.

DATED this 15th day of February, 2018.

                                                BY THE COURT:

                                                *David Sam*

                                                DAVID SAM
                                                SENIOR JUDGE
                                                UNITED STATES DISTRICT COURT